# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **BENNETT L. RADUZINER,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**O'DANIEL MOTOR CENTER INC.,** )<br>)<br>**Defendant.** ) | 8:05CV464<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court pursuant to 28 U.S.C. § 636 and the consent of the parties on defendant's MOTION FOR SUMMARY JUDGMENT (#24). Plaintiff has asserted claims for employment discrimination under the Americans with Disabilities Act, 42 U.S.C. §§12101-12213 ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621-624 ("ADEA"), and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125("NFEPA").

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that summary judgment should be granted in favor of the defendant.

## I. FINDINGS OF FACT

I find that the following facts are uncontroverted for purposes of this Motion for Summary Judgment and constitute the material facts upon which a resolution of these issues must be premised.

1. Defendant, O'Daniel Motor Center, Inc. ("O'Daniel"), is a car dealership located at approximately 76th and Dodge Streets in Omaha, Nebraska.

2. One of the cornerstones of O'Daniel's operations is customer courtesy and respect.

3. Plaintiff was a sales consultant with O'Daniel from July 23, 1992 to February 10, 2004.

4. Plaintiff's employment with O'Daniel was terminated on February 10, 2004.

5. At the time of his termination, Plaintiff was 75 years old.

6. At the time of his termination, Plaintiff was supervised by general sales manager Matt O'Daniel and used car manager Jack Schu.

7. As a sales consultant, Plaintiff sold new and used cars to O'Daniel's customers. Part of his job required him to help keep the new and used car lots presentable, which ranged from organizing cars to cleaning snow from the lot and cars after snow storms.

8. During the last two years of his employment, Plaintiff frequently told Matt O'Daniel about the pain he was in, the difficulty he had selling vehicles, and generally how badly things were going for him. During these conversations, Matt O'Daniel informed Plaintiff that if working was too difficult or bad, he could always retire. On more than one occasion, Matt O'Daniel informed Plaintiff that if he were interested in retiring, O'Daniel would be happy to have a retirement party for him.

9. Plaintiff's repeated complaining had a negative effect on O'Daniel's entire sales force.

10. On January 31, 2004, Plaintiff was talking to a female customer about her trade in. The customer thought that her trade-in, a two-wheel drive pick-up, was worth between $5,000 and $7,000 more than O'Daniel was willing to pay. Plaintiff told the customer that her trade-in was like an abortion.

11. Matt O'Daniel overheard Plaintiff refer to the female customer's trade-in as an "abortion" and saw the customer briskly leave the dealership.

12. Matt O'Daniel was upset by Plaintiff's comment.

13. That evening, Matt O'Daniel met with Plaintiff to discuss his comment. During this conversation, Plaintiff did not apologize for making the comment. Instead, Plaintiff said he talks to people like that all the time, and he did not think this was a big deal.

14. Matt O'Daniel informed Plaintiff that his comment was entirely inappropriate and that his employment would be terminated. In light of Plaintiff's longevity with O'Daniel, Matt O'Daniel gave Plaintiff the option of retiring instead of being terminated and gave him one week to think it over.

15. After Plaintiff informed Matt O'Daniel that he had no intention of retiring, Matt O'Daniel terminated plaintiff's employment.

16. By letter dated September 20, 2005, Plaintiff's treating physician, Anthony L. Hatcher, M.D., reported that Plaintiff first consulted him on October 7, 2003, complaining of ongoing pain in his back, hips, and posterior thighs. Apparently, Plaintiff had injured his back many years ago and the injury was not related to his employment at O'Daniel Motor Center. Dr. Hatcher determined that Plaintiff suffered from "significant degenerative disc disease with arthritis." Dr. Hatcher prescribed anti-inflammatory and pain medications, advised plaintiff to obtain a handicapped parking sticker, and recommended that he not walk more than half a block, stand more than 30 minutes, or lift more than 20 pounds. In November 2003, Plaintiff was also found to be severely anemic due to a stricture in his intestinal tract caused by the anti-inflammatory medications. The anemia caused shortness of breath, fatigue, and weakness. These conditions were corrected or alleviated over time by changes in medication.

17. Dr. Hatcher's September 20, 2005 report concludes that Plaintiff is not disabled and is still able to perform the duties of a car salesman, subject to restrictions that he (a) not walk more than

half a block, (b) not lift more than 20 pounds, (c) not stand for longer than 30 minutes, and (d) that he provided parking adjacent to his office. Since Dr. Hatcher did not receive any job description from either Plaintiff or O'Daniel, he was unable to determine whether these restrictions were consistent with Plaintiff's previous position at O'Daniel.

18. Plaintiff claims he was disabled during his employment, in that he could not walk long distances, was in pain, and could not shovel snow.

19. Up until Plaintiff's last day of work, he was able to perform his job, including covering all areas of O'Daniel's parking lots to wait on customers and get cars.

20. Plaintiff admits that, during his employment, he never asked for help or an accommodation or change in his job description. (Plaintiff's Deposition, 126:8-24).

21. During the relevant time period, the O'Daniel employees' parking lot was approximately one and one-half blocks away from the business. Plaintiff did ask supervisor Jack Schu for a closer parking space but was told he had to do what the other employees did. Plaintiff did not talk to Matt O'Daniel about parking and did not tell O'Daniel that he had a letter from his doctor regarding handicapped parking. Plaintiff was told by Jack Schu that he could not park in the lot of an adjacent business, regardless of whether he had a doctor's letter or a handicapped parking permit; no other O'Daniel employees were allowed to park in the customer parking lot of the adjacent business. Plaintiff did not tell Jack Schu or Matt O'Daniel that he had obtained permission from the business owner to park there.

22. Plaintiff was able to walk from his car to O'Daniel from the employee parking lot. (Plaintiff's Deposition, 110:17-20).

23. Plaintiff admits that his alleged disabilities, i.e., difficulty walking distances, pain, and inability to shovel snow did not affect any other aspects of his life. Even though he claims to suffer from a disability, Plaintiff is able to dress himself, care for himself, walk from his parking spot to his apartment, help out around his and his wife's apartment, drive a car, help with the dishes, help with the laundry, and maintain the family checkbook. (Plaintiff's Deposition, 127:17-128:25).

## II.  LAW

### A.  Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331and 1367. Venue in this court is proper under 28 U.S.C. § 1391.

### B.  Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.  *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997); NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)).  A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998).  In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' ... [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998); *see* NECivR 56.1(b).

### C. Americans With Disabilities Act ("ADA") (42 U.S.C. §§ 12101 to 12213); Nebraska Fair Employment Practices Act ("NFEPA") (Neb. Rev. Stat. §§ 48-1101 to 48-1125)

The ADA, 42 U.S.C. § 12112(a), provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." "Discrimination" includes an employer's failure to make reasonable accommodations to the known

physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer. *Dropinsky v. Douglas County*, 298 F.3d 704, 707 (8th Cir. 2002); 42 U.S.C. § 12112(b)(5)(A).

To prove disability discrimination, the plaintiff "must establish that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability." *Dropinsky v. Douglas County*, 298 F.3d at 706; *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 783 (8th Cir. 2006).[1]

Once a plaintiff has proven a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the employee to prove that the reason was pretextual. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005). To prove pretext, the employee "must do more

---

[1] The disability discrimination provisions in the NFEPA are patterned after the ADA, and the state definitions of "disability" and "qualified individual with a disability" are defined in terms virtually identical to the definitions under the ADA. *See* Neb. Rev. Stat. §§ 48-1102(9) & (10); 42 U.S.C. §§ 12102(2) & 12111(8). "In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA. *See, e.g., Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999); *IBP, Inc. v. Sands*, 563 N.W.2d 353, 357-59 (Neb. 1997)." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002), *cert. denied*, 541 U.S. 1070 (2004).

than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d at 1034.

Plaintiff's complaint alleges that he is disabled in that his anemia, degenerative disc disease and arthritis affected his ability to perform "certain major life activities" in that he could not walk several blocks, could not lift more than 20 pounds, and could not stand more than 30 minutes. (Complaint, ¶ 21). In his brief, Plaintiff clarifies that "The major life activity in which [he] is substantially limited is walking." (Filing 31 at p. 27).

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002) (citing 42 U.S.C. § 12102(2)(A)). "To qualify as disabled, a claimant must further show that the limitation on the major life activity is 'substantia[l].'" *Id*. The terms "substantial" and "major" must be interpreted strictly to create a demanding standard for qualifying as disabled. *Id.* at 197. "Determining whether a major life activity has been substantially limited is an individualized inquiry. Thus, 'if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures–both positive and negative–must be taken into account.'" *Brunke v. Goodyear Tire & Rubber Co.*, 344 F.3d at 821 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999)). In summary, a finding of disability depends on "whether the net effect of the impairment is to prevent or severely restrict the plaintiff from doing the set of activities that are 'of central importance to most people's daily lives,' *Williams*, 534 U.S. at 198, or from working, *see Webner* [*v. Titan Dist., Inc.*, 267 F.3d 828, 834 (8th Cir. 2001)]." *Nuzum v. Ozark Auto. Dist., Inc.*, 432 F.3d 839, 846 (8th Cir. 2005).

In this case, the record shows–and Plaintiff admits–that Plaintiff was able to walk wherever necessary to wait on customers and sell them cars. While Plaintiff complains he had difficulty being outside in cold weather and cleaning snow[2] off vehicles, he did not ask for any assistance with these aspects of his job because "that would mean splitting everything that [he] sold." (Plaintiff's Deposition, 126:8-21).

It is insufficient for Plaintiff to merely submit evidence of a medical diagnosis of an impairment as proof that he is disabled. "Instead, the ADA requires those 'claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial.'" *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. at 198. While Plaintiff has demonstrated various impairments and medical conditions, he has not shown that those impairments prevented or severely restricted him from performing any activities that are of central importance to most people's daily lives. The court's individualized inquiry into this matter compels me to conclude that Plaintiff is not disabled within the meaning of the ADA.

Even assuming that Plaintiff was disabled, the court finds that O'Daniel had legitimate, non-discriminatory reasons for terminating his employment. In so finding, the court is mindful that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Kincaid*

---

[2]In any event, shoveling snow is not a "major life activity" under the ADA. *See Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999). Plaintiff admits that he only pushed as much snow as he could handle and then went inside (Plaintiff's Deposition, 123:22-124:4), and he was never reprimanded for going inside when he became exhausted. *Id.* at 114:15-19.

*v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). Plaintiff's managers were dissatisfied with his sales performance and his generally poor attitude. Plaintiff's employment was ultimately terminated after his supervisor, Matt O'Daniel, overheard him telling a female customer that her proposed trade-in was "an abortion."[3] Plaintiff would not concede that his conduct was inappropriate, refused to apologize, and told O'Daniel he talked to customers like that all the time. (O'Daniel Deposition, 46:21-48:23).

Since O'Daniel has shown several nondiscriminatory reasons for terminating Plaintiff's employment, the burden shifts back to Plaintiff to prove that the reasons were pretextual.

> To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both "that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." .... "This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." .... Specifically, the plaintiff "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination."

*Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (citations omitted). Viewed in the light most favorable to the plaintiff, the evidence shows that Plaintiff was terminated for what his supervisor perceived to be offensive and inappropriate behavior towards a customer, combined with Plaintiff's increasingly unsatisfactory sales record and generally poor attitude.

In summary, Plaintiff has not proven that he is disabled within the meaning of the ADA. Even assuming that Plaintiff is disabled, O'Daniel has shown nondiscriminatory reasons for

---

[3]Plaintiff contends that Matt O'Daniel did not personally overhear this remark, but that it was reported to him by another employee. *See, e.g.,* Plaintiff's Deposition at p. 38. This difference does not amount to a disputed material fact. The material aspects of the incident are that O'Daniel either heard or learned of the remark, Plaintiff unabashedly admitted making the remark to this customer and said he had spoken similarly to other customers, and O'Daniel found the remark to be offensive and inappropriate.

terminating Plaintiff's employment, and plaintiff has failed to prove that these reasons are pretextual. For these reasons, summary judgment will be granted in favor of O'Daniel on plaintiff's claims for disability discrimination.

### D.  Age Discrimination in Employment Act ("ADEA") (29 U.S.C. §§ 621-624)

"The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of the employee's age if the employee is 40 years of age or older." *Sims v. Chezik/Sayers Iowa, Inc.*, 361 F. Supp. 2d 926,  929 (S.D. Iowa 2005) (quoting *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004)).  *See also* 29 U.S.C.A. § 631.

Since Plaintiff has not offered direct evidence of age discrimination,[4] his age discrimination claim is

> subject to the well-worn burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 931 (8th Cir. 2000) (age discrimination); *Allen v. Interior Constr. Serv., Ltd.*, 214 F.3d 978, 981 (8th Cir. 2000) (disability discrimination); *Scott v. County of Ramsey*, 180 F.3d 913, 917 (8th Cir. 1999) (retaliation).  Under this framework, the employee must first establish a prima facie case of illegal discrimination.  *Id.* It then falls to the employer to promulgate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).  The burden then shifts back to the employee who must either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

---

[4] Matt O'Daniel's inquiries as to whether Plaintiff intended to retire do not constitute "direct evidence" of age discrimination.  *See, e.g., Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 853 (8th Cir. 2005); *Schierhoff v. Glaxosmithkline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006); *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2001) (reasonable inquiries into an employee's retirement plans do not permit an inference of discrimination); *Barket v. Nextiraone, LLC,* No. CIV.01-278, 2002 WL 1457631 at *3 (D. Minn. 2002), *aff'd*, 72 Fed. Appx. 508 (8th Cir. 2003) (Supervisor's statements about retirement merely reflected "the very real fact that Barket was approaching retirement age, that he could no longer perform his job duties, and that retirement was thus an attractive option.").

*Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (parallel citations omitted).

> The plaintiff must first establish a prima facie case that the defendant violated the statute. To make such a case under the ADEA, the plaintiff must ordinarily show that: (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a younger worker.

*Id.* at 930 (quoting *Hitt*, 356 F.3d at 924).

Plaintiff is a member of the protected age group, as he was 75 years old when his employment was terminated. He was discharged, and he was replaced by younger workers.

The element of contention here is whether the plaintiff was performing his job at a level that met his employer's legitimate expectations. The court finds that he was not. O'Daniel reasonably expects its employees to treat customers with courtesy and respect. Telling a customer that her proposed trade-in vehicle was "an abortion" is not compatible with that expectation. Plaintiff failed to acknowledge the inappropriate nature of this comment, did not apologize, and actually told his supervisor that he made similar comments to other customers. The court finds that Plaintiff was terminated because he was not meeting O'Daniel's legitimate expectations as an employee.

Even assuming that plaintiff has established a prima facie case of age discrimination, for the reasons discussed in conjunction with plaintiff's ADA claim, O'Daniel has given a legitimate, non-discriminatory reason for the termination.

I find that the plaintiff has not proven O'Daniel's stated reasons were pretextual in the context of age discrimination. While plaintiff alleges he was harassed by questions from O'Daniel management about his retirement plans, the record shows that those comments were made in response to plaintiff's numerous complaints about his job or his health problems. Plaintiff had

worked for O'Daniel for 12 years, from age 63 to 75. Taken in context, these remarks do not constitute proof of age discrimination. For example, in *Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 853-54 (8th Cir. 2006), the court observed:

> We have held that the statement by a decisionmaker to an employee allegedly made while explaining the decision to demote him, "Twenty years is too long. You should have moved five years ago," did not constitute direct evidence of age discrimination. *Erickson v. Farmland Indus., Inc.,* 271 F.3d 718, 725 (8th Cir. 2001). This is because "[t]o amount to direct evidence of age discrimination, there would have to be evidence that [the employer] was using length of tenure as a proxy to accomplish age discrimination." *Id.* Also in *Erickson,* the decisionmaker's comments that the employee was "stale," "set in his ways" and "needed a new focus" did not constitute direct evidence. *Id.* at 724-25. Similarly, here the interviewers' comments to Lee regarding changes in the Fort Smith plant express "legitimate business concerns," *id.* at 725, and do not "clearly point[ ] to the presence of an illegal motive." *Griffith,* 387 F.3d at 736. No reasonable fact-finder could conclude that the questions and statements posed to Lee are direct evidence that age discrimination actually motivated Rheem's decision not to hire Lee.

In *Schierhoff v. Glaxosmithkline Consumer Healthcare, L.P.*, 444 F.3d 961 (8th Cir. 2006), the plaintiff complained of age and disability discrimination based in part on his supervisor's comment that

> "[y]ou know, I bet you got something hurting all over your body all the time, you've had a rough life. You've done a lot of things. At any given time I bet you got something hurting on your body. You know as old and worn out as you are, why don't you just quit? You don't need the money anyway." Schierhoff understood this comment to mean that Rohowetz regarded him as "generally disabled and unable to perform [his] job," and he asserts that the comment, coupled with Rohowetz's role in his termination, demonstrates that the termination was undertaken because of Schierhoff's age or disability. In addition, Schierhoff heard from a co-worker that another manager, Vertis Thomas, once spoke about "mechanics whose knees are worn out by the time they reach age 50," and said that "[t]hey should be given a chance to retire or bow out gracefully before then."

444 F.3d at 964. The Court of Appeals determined that these statements did not constitute direct evidence of age discrimination and affirmed the district court's use of the *McDonnell Douglas* burden-shifting analysis in granting summary judgment in favor of the defendant.

The court finds that Plaintiff has not proven a prima facie case of age discrimination. Even assuming that Plaintiff had proven a prima facie case, O'Daniel has shown nondiscriminatory reasons for terminating Plaintiff's employment, and plaintiff has failed to prove that these reasons were a pretext for age discrimination. For these reasons, summary judgment will be granted in favor of O'Daniel on plaintiff's ADEA claim.

### III.  DECISION

Viewing the facts and inferences in the light most favorable to the plaintiff, the court finds there is no genuine issue as to any material fact and the defendants are entitled to a judgment as a matter of law.

**IT THEREFORE IS ORDERED:**

1. Defendant's MOTION FOR SUMMARY JUDGMENT (#24) is granted in its entirety.

2. Pursuant to this Memorandum and Order, judgment will be entered in favor of the defendant and against the plaintiff.

**DATED September 1, 2006.**

> **BY THE COURT:**
>
> **s/ F.A. Gossett**
> **United States Magistrate Judge**